UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

WILMINGTON TRUST, N.A., as trustee for the registered holders of Credit Suisse First Boston Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2019-Sb67,

                      Plaintiff,

    -against-

1738 EAST 4TH STREET LLC, ELIE SABBAGH, and THE CITY OF NEW YORK ENVIRONMENTAL CONTROL BOARD,

                    Defendants.

**MEMORANDUM & ORDER**
**23-CV-1270 (NGG) (RML)**

NICHOLAS G. GARAUFIS, United States District Judge.

Seeking to foreclose on a mortgage (the "Mortgage") encumbering the real property located at 1738 East 4th Street, Brooklyn, New York 11223 (the "Property"), Plaintiff Wilmington Trust N.A., as trustee for the registered holders of Credit Suisse First Boston Mortgage Securities Corp., Multifamily Mortgage Pass Through Certificates, Series 2019-SB67 ("Plaintiff"), commenced the above-captioned action against Defendants 1738 East 4th Street LLC ("Borrower") and Elie Sabbagh ("Guarantor"), as well as the City of New York Environmental Control Board ("ECB") and numerous unnamed "John Doe" defendants pursuant to the New York Real Property Actions and Proceedings Law ("RPAPL") §§ 1301 *et seq.* (Compl. (Dkt. 1) ¶¶ 1-5.) Plaintiff alleges that Borrower has been in default on its obligations secured by the Mortgage since August 2022, and that Plaintiff—as the owner and holder of the Mortgage—is entitled to a foreclosure judgment against Borrower and Guarantor ("Defendants") as a result. (*Id.* ¶¶ 24-32, 37.)

1

On October 30, 2023, the court dismissed Plaintiff's claim against the John Doe defendants. (Mem. & Order Dated 10/30/2023 ("10/30/2023 M&O") (Dkt. 19) at 2.) On April 24, 2024, Defendants filed their answer (the "Answer"). (Defs.' Answer (Dkt. 37).)

Pending before the court is Plaintiff's fully briefed motion for summary judgment on its RPAPL claim and to "strike" the Answer pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] (Pl.'s Mot. for Summ. J. ("Pl.'s Mot.") (Dkt. 62-12) at 1; Defs.' Opp. (Dkt. 63); Pl.'s Reply (Dkt. 64).) For the reasons set forth below, the court GRANTS IN PART and DENIES IN PART Plaintiff's summary judgment motion.[2] Specifically, the court denies summary judgment to Plaintiff both on its RPAPL claim and on Defendants' tenth affirmative defense due to Plaintiff's failure to comply with the mandatory statutory notice requirements in RPAPL § 1303.[3]

---

[1] The ECB does not challenge Plaintiff's right to foreclose. (ECB's Answer (Dkt. 13).) Through its motion, Plaintiff "simply moves for a judgment against [the] ECB simultaneously herewith." (Pl.'s Mot. at 4 n.1.)

[2] Plaintiff's request that the court "strike" the Answer is, in fact, a request for summary judgment on each of Defendants' ten affirmative defenses. *Compare* Fed. R. Civ. P. 12(f), *with* Fed. R. Civ. P. 56(a). In its opening motion, Plaintiff asserts that these defenses "lack merit," meaning that it is "appropriate" to "strike the Answer" and "grant summary judgment" in Plaintiff's favor. (Pl.'s Mot. at 1.) Plaintiff has not filed a motion to strike under Rule 12(f); Plaintiff has filed a motion for summary judgment under Rule 56. (*Id.* at 6-7; Pl.'s Not. of Mot. (Dkt. 62).) Thus, the court examines each affirmative defense pursuant to the summary judgment principles set forth in Section III.B, *infra*. *See generally Badar v. Swissport USA, Inc.*, 492 F. Supp. 3d 54, 58-59 (E.D.N.Y. 2020) (distinguishing Rule 56's requirements for summary judgment from the "[t]hree prerequisites" a plaintiff "must show" before a court "may grant a motion to strike defenses" under Rule 12(f)) (internal citations omitted).

[3] RPAPL sets forth strict notice requirements for foreclosure actions involving "residential real property" as that phrase is defined in RPAPL

2

## I.    BACKGROUND

The court assumes familiarity with the facts and extensive procedural history as set forth in prior decisions. (10/30/2023 M&O; Mem. & Order Dated 4/12/2024 ("4/12/2024 M&O") (Dkt. 35).) Therefore, the court provides a summary of only the pertinent facts and procedural history here.

### A.    Factual Background

The following facts are not in dispute.[4]

Plaintiff is a national banking association with its main office in Wilmington, Delaware, and the owner of a pool of mortgage loans including the one at issue in this case.[5] (Compl. ¶¶ 8-9; Defs.' Answer ¶ 1.) Borrower is the owner of the Property, and a limited liability company organized under the laws of New York State with an address in Brooklyn. (Sabbagh Decl. (Dkt. 33-11)

---

§ 1305(1)(a). Where the mortgaged property has tenants, the foreclosing party must "deliver" notice of the foreclosure action to those tenants as set forth in RPAPL § 1303, which the court discusses in more detail below, *infra* Sections III.A.2 & III.B.4.

[4] The undisputed facts are drawn, primarily, from the material facts set forth in the parties' respective Local Rule 56.1 Statements. (Pl.'s Loc. Civ. R. 56.1 Stmt. ("Pl.'s 56.1") (Dkt. 62-1); Defs.' Loc. Civ. R. 56.1 Resp. to Pl.'s 56.1 ("Defs.' 56.1") (Dkt. 63-1).) In reviewing Plaintiff's motion, the court also "exercised its discretion to conduct an assiduous review of the record in order to consider what the parties have failed to point out in [these statements]," and considered "only facts that have been established by admissible evidence." *Windward Bora, LLC v. Regalado,* 751 F. Supp. 3d 122, 127 (E.D.N.Y. 2024) (quoting *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 73 (2d Cir. 2001)); *see also McGowan v. Stanley,* No. 23-CV-7769, 2024 WL 5038633, at *2 (2d Cir. Dec. 9, 2024) (summary order) (same).

[5] Therefore, for purposes of diversity jurisdiction, Plaintiff is a citizen of Delaware. *See OneWest Bank, N.A. v. Melina,* 827 F.3d 214, 219 (2d Cir. 2016) (per curiam) (holding that "a national bank is a citizen only of the state listed in its articles of association as its main office").

¶¶ 2, 8; Defs.' Answer ¶ 2.) Guarantor is the sole member of Borrower, and an individual citizen of New York. (Sabbagh Decl. ¶ 2; Sabbagh Aff. (Dkt. 63-8) ¶ 2; Defs.' Answer ¶ 6.) The ECB is alleged to hold subordinate interests in the Property, and is a New York City agency with a New York City address.[6] (Compl. ¶ 4; ECB's Answer.) The Property is a commercial building "operating as an apartment building." (Esteve Decl. (Dkt. 62-2) ¶ 8.) The subject loan documents identify the Property as a "dwelling only," "multifamily" property with "more than 6 residential dwelling units." (Mortgage (Dkt. 62-6) at ECF pp.2, 15; Assignment (Dkt. 62-7) at ECF p.2.)

On May 30, 2019, the Federal Home Loan Mortgage Corporation ("Freddie Mac") made a commercial mortgage loan on the Property to Borrower in the original principal amount of $1,480,000.00 (the "Loan"). (Defs.' 56.1 ¶ 1.) In connection with the Loan, Freddie Mac and Borrower executed a note (the "Note") and loan agreement (the "Loan Agreement"). (*Id.* ¶¶ 1, 2; *see also* Note (Dkt. 62-5); Loan Agreement (Dkt. 62-4).) As security for the Note, Borrower also executed and delivered to Freddie Mac a consolidated extension and modification agreement—the Mortgage. (Defs.' 56.1 ¶ 3; *see also* Mortgage.) Also on that day, Guarantor executed a guaranty (the "Guaranty"), guaranteeing Borrower's obligations under the Note, the Mortgage, and other Loan documents.[7] (Defs.' 56.1 ¶ 5; *see also* Guaranty (Dkt. 62-8).) Borrower recorded the Mortgage on

---

[6] In this case, the ECB is a suable entity. RPAPL § 202-a. It is also properly named as a defendant given its alleged interests in the Property. RPAPL § 1311(3).

[7] In addition to the Note and the Mortgage, the phrase "other Loan documents" refers to and includes the Loan Agreement, the Guaranty, and the Assignment, as well as "all other documents evidencing, securing, or executed in connection with the Loan." (Defs.' 56.1 ¶ 6; Esteve Decl. ¶ 10.)

June 5, 2019. (Defs.' 56.1 ¶ 3; Esteve Decl. ¶ 6; *see also* Mortgage at ECF p.2 (prepared 6/4/2019).)

On October 2, 2019, Freddie Mac assigned the Note and the Mortgage to Plaintiff (the "Assignment"). (Defs.' 56.1 ¶ 4; *see also* Assignment at ECF p.5 (executed 10/2/2019; effective 10/18/2019); Allonge to Note ("Allonge") (Dkt. 62-5 at ECF p.25).) The Assignment was recorded on October 24, 2019. (Defs.' 56.1 ¶ 4; Esteve Decl. ¶ 7; *see also* Assignment at ECF p.2 (prepared 10/23/2019).)

Beginning with the monthly Loan payment due on August 1, 2022, Borrower failed to comply with its obligations under the Note. (Defs.' 56.1 ¶¶ 7-8; Note § 3(a) at ECF p.6; Esteve Decl. ¶¶ 11-12; Payment History for Loan ("Payment History") (Dkt. 62-9).) Borrower also failed to comply with its obligations under the Loan Agreement by failing to pay the Property's water and sewer bill, and property taxes. (Defs.' 56.1 ¶ 9; Loan Agreement § 6.08 at ECF pp.38-39; Esteve Decl. ¶¶ 13-14.)

Based on the foregoing payment failures, Plaintiff notified Defendants that Borrower was in default on the Loan by letter dated November 29, 2022 (the "Default Letter"). (Defs.' 56.1 ¶ 10; Esteve Decl. ¶ 15; *see also* Default Letter (Dkt. 62-10) at ECF p.3.) Plaintiff demanded that Borrower cure the defaults by making the required payments on or before December 9, 2022, and explained that failure to do so may result in acceleration of the Loan, enforcement of the Guaranty, and the appointment of a receiver for the Property ("Receiver"). (Defs.' 56.1 ¶ 10; Esteve Decl. ¶ 15; *see also* Default Letter at ECF pp.3-4.) Borrower failed to make the payments. (Defs.' 56.1 ¶¶ 8, 12-13; Esteve Decl. ¶¶ 12-13, 17-18; *see also* Payment History.)

Plaintiff mailed Defendants a second letter dated January 11, 2023 (the "Acceleration Letter"). (Defs.' 56.1 ¶ 11; Esteve Decl. ¶ 16; *see also* Acceleration Letter (Dkt. 62-11).) Therein, Plaintiff

5

acknowledged Borrower's continued defaults, accelerated the Loan, and warned Defendants that failure to make full, "immediate" payment of "all amounts owed" may result in the appointment of a Receiver and foreclosure of the Property "without further notice." (Defs.' 56.1 ¶ 11; Esteve Decl. ¶ 16; Acceleration Letter at ECF pp.3-4.) Again, Borrower failed to pay. (Defs.' 56.1 ¶¶ 8, 12-13; Esteve Decl. ¶¶ 12-13, 17-18; *see also* Payment History.) This suit followed.

When Plaintiff commenced this action on February 13, 2023, it was the owner and holder of, and in physical possession of, the Note, the Mortgage, and other Loan documents. (Defs.' 56.1 ¶¶ 4, 6; Esteve Decl. ¶¶ 7, 10; *see also* Compl. (attaching these documents).)

## B.  Procedural History

Defendants initially failed to answer the Complaint or otherwise appear in this case. The Clerk entered their Defaults. By Memorandum and Order dated October 3, 2023, the court granted Plaintiff's motion for a default judgment of foreclosure and sale of the Property against Borrower and appointed a Receiver. (10/30/2023 M&O at 2.)

On November 16, 2023, Defendants entered their appearances. Four days later, they stated their intention to move to vacate their defaults based on, as relevant here, the claimed "meritorious defense" that Plaintiff had "failed to assert compliance" with the statutory notice requirements in RPAPL. (Defs.' Letter Dated 11/20/2023 (Dkt. 24) at 2, 3.) In direct response, and "out of an abundance of caution," Plaintiff delivered a notice—purportedly in compliance with RPAPL—on December 5, 2023 (the "December 2023 Notice"). (Pl.'s Resp. Letter Dated 2/13/2024 (Dkt. 30) at 2; *see also* Dec. 2023 Not. (Dkt. 42-1); Aff. of Serv. of Dec. 2023 Not. ("Dec. 2023 Not. Aff.") (Dkt. 63-3).)

6

By Memorandum and Order dated April 12, 2024, the court granted Defendants' motion to vacate. The court agreed with Defendants that Plaintiff's alleged failure to comply with RPAPL's notice requirements amounted to a "meritorious defense" that weighed in favor of vacating the default judgment in this case. (4/12/2024 M&O at 6-8.) In doing so, the court highlighted Plaintiff's apparent "attempt[] to cure the deficiency in notice," and explained that even if the December 2023 Notice otherwise complied with RPAPL's content and form requirements, it would "still be untimely under New York law" because it was not "delivered" by the 10-day statutory deadline. (*Id.* at 7-8 (citing RPAPL § 1303(4)).)

After the court vacated their defaults, Defendants filed the Answer. Therein, Defendants assert ten affirmative defenses, including that Plaintiff allegedly failed to comply with RPAPL's notice requirements. (Defs.' Answer ¶ 53.) In response, Plaintiff moved for an order either: (i) "Holding that Plaintiff has complied" with RPAPL's requirements "through service of the [December 2023 Notice]"; or (ii) "Alternatively, granting Plaintiff leave to amend its Complaint and re-serve the amended complaint and [the RPAPL] notice" on the Property's tenants. (Pl.'s Not. of Mot. to Hold Compliance (Dkt. 40) at 1.) Plaintiff did not identify under which Rule the motion was made. (*Id.*; Pl.'s Mot. to Hold Compliance (Dkt. 40-1).)

On January 6, 2025, the court denied Plaintiff's motion in an oral ruling. (Tr. of 1/6/2025 Pre-Mot. Conf. (Dkt. 75) at 6:06-07.) First, the court concluded that properly construed, the motion was a motion to strike an affirmative defense under Rule 12(f). (*Id.* at 6:09-17.) Second, the court concluded that it would not be appropriate to consider a motion to strike, given the "numerous open questions of law and fact" at that time. (*Id.* at 6:18-7:06.) Regarding this second conclusion, the court highlighted

7

the open question of law as to whether Defendants "have standing to raise an affirmative defense under [RPAPL]," and the open factual questions about the "timing and manner" of Plaintiff's delivery of the December 2023 Notice. (*Id.* at 7:07-10.) The court directed the parties to address those questions in their summary judgment briefing. (*Id.* at 7:11-17.) The parties' briefing followed.

## II. LEGAL STANDARDS

### A. Summary Judgment

Rule 56 authorizes summary judgment "only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" *Capitol Recs., LLC v. Vimeo, Inc.*, 125 F.4th 409, 418 (2d Cir. 2025) (quoting Fed. R. Civ. P. 56(a)); *see also Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (same).[8] Thus, the movant carries two burdens: (1) to demonstrate its entitlement to judgment as a matter of law; and (2) to show that no "genuine" factual dispute exists as to any "material" issue.[9] *Anderson v. Liberty Lobby, Inc. (Liberty Lobby)*, 477 U.S. 242, 256 (1986); *Lara-Grimaldi v. Cnty. of Putnam*, 132 F.4th 614, 633 (2d Cir. 2025) (same). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. An issue is material if it "might affect the outcome of the suit under the governing law." *Id.*

---

[8] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

[9] When, as here, the plaintiff moves for summary judgment, it carries the additional "burden of producing . . . evidence that would support a jury verdict" in its favor. *Liberty Lobby*, 477 U.S. at 256 ("The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict.").

8

The court's primary function is to determine if—on the evidence presented—the movant has carried its burden to establish that it is "entitled to judgment as a matter of law." *Kemp v. Regeneron Pharms., Inc.*, 117 F.4th 63, 68 (2d Cir. 2024). In answering this question, the court "must view the evidence in the light most favorable to the opposing party," *Tolan*, 572 U.S. at 657; *see also Radwan v. Manuel*, 55 F.4th 101, 113 (2d Cir. 2022) (same), and "resolve all ambiguities and draw all permissible factual inferences" in the nonmovant's favor, *Koral v. Saunders*, 36 F.4th 400, 408 (2d Cir. 2022).

### B.   New York Mortgage Foreclosure

In New York, "mortgage foreclosure actions are governed by Article 13 of RPAPL." *Blue Castle (Cayman) Ltd. v. Tawil*, No. 24-CV-1082 (MKB), 2025 WL 2482306, at *3 (E.D.N.Y. Aug. 28, 2025) (quoting *OneWest Bank, N.A. v. Conklin*, 310 F.R.D. 40, 44 (N.D.N.Y. 2015)); *Green Mountain Holdings (Cayman) LTD v. 501 Lafayette Ave LLC*, No. 21-CV-5844 (MKB), 2025 WL 2494292, at *5 (E.D.N.Y. Aug. 28, 2025) (same). Thus, to prevail at summary judgment, a plaintiff "must satisfy" both: (1) the "common law elements" of a mortgage, note, and a defendant's default; and (2) the applicable "statutory [notice] requirements set forth in Article 13."[10] *Wilmington Sav. Fund Soc'y, FSB v. Fernandez*, 712 F. Supp. 3d 324, 332 (E.D.N.Y. 2024) (citing

---

[10] Article 13 mandates the delivery of specific notices to the mortgaged property's homeowner(s), tenants, or both, depending on whether the property is "owner-occupied" or occupied by "any tenants," and on the number of "dwelling units." RPAPL § 1303(1). These requirements are "substantive in nature" (they govern a plaintiff's "entitlement to . . . foreclosure relief") and thus, "must be followed in federal court." *Fernandez*, 712 F. Supp. 3d at 333-34; *Razionale*, 2026 WL 412089, at *1 (citing *Aronson v. Callahan*, 83 N.Y.S.3d 792, 793-94 (N.Y. Sup., Ulster Cnty. 2018)); *Deutsche Bank Nat'l Tr. Co. as Tr. for GSAA Home Equity Tr. 2007-5, Asset-Backed Certificates, Series 2007-5 v. Shewtahal*, No. 24-CV-7892

*Conklin*, 310 F.R.D. at 44); *Green Mountain*, 2025 WL 2494292, at *5 (same); *PHH Mortg. Corp. v. Razionale*, No. 25-CV-3029 (AT), 2026 WL 412089, at *1 (S.D.N.Y. Feb. 13, 2026) (same).

If a plaintiff establishes the common law and statutory requirements, it makes out a prima facie case, meaning that the plaintiff "has a presumptive right to foreclose that can only be overcome by an affirmative showing by the mortgagor." *Golden Bridge LLC v. 150-30 Ave Realty LLC*, No. 23-CV-09045 (NCM) (PK), 2025 WL 1548859, at *4 (E.D.N.Y. May 30, 2025); *see also Plenitude Cap. LLC v. Utica Ventures, LLC*, No. 18-CV-2702 (MKB) (RER), 2019 WL 4014840, at *4-5 (E.D.N.Y. June 11, 2019) (collecting examples), *report and recommendation adopted*, 2019 WL 3543610 (E.D.N.Y. Aug. 5, 2019). That is, *if* the plaintiff establishes a prima facie case, *then* the burden "shifts to the defendant to raise a triable issue of fact with respect to the plaintiff's proof or an affirmative defense." *Fernandez*, 712 F. Supp. 3d at 333 (citing *Gustavia Home, LLC v. Bent*, 321 F. Supp. 3d 409, 414 (E.D.N.Y. 2018)); *Tawil*, 2025 WL 2482306, at *3 (same); *see also CIT Bank N.A. v. Donovan*, 856 F. App'x 335, 336-37 (2d Cir. 2021) (summary order) ("If the plaintiff establishes a prima facie case, 'the burden then shifts to the defendant to demonstrate the existence of a triable issue of fact as to a bona fide defense to the action, such as waiver, estoppel, bad faith, fraud, or oppressive or unconscionable conduct on the part of the

---

(ERK) (RML), 2025 WL 2402824, at *4 n.2 (E.D.N.Y. Aug. 19, 2025) ("Although the requirements set forth in Article 13 of RPAPL are sometimes described as 'procedural,' district courts in this circuit have concluded that these requirements are 'substantive in nature' and thus must be followed in federal court as well as state court."); *see also Berk v. Choy*, 607 U.S. ___, 2026 WL 135974, at *6 (U.S. Jan. 20, 2026) (distinguishing a procedural rule, which "regulates only the process for enforcing [the parties'] rights," from a substantive rule that alters "the rights themselves, the available remedies, or the rules of decision" by which the court adjudicates either).

plaintiff.") (quoting *Capstone Bus. Credit, LLC v. Imperia Fam. Realty, LLC*, 70 A.D.3d 882, 883 (2d Dep't 2010)).

## III. DISCUSSION

The court denies the portion of Plaintiff's motion for summary judgment on its RPAPL claim and grants in part and denies in part the portion of the motion requesting summary judgment on each of Defendants' ten affirmative defenses.

### A.   New York Mortgage Foreclosure

Plaintiff has failed to establish a prima facie case on its RPAPL claim. Although Plaintiff has satisfied the common law elements, it has failed to demonstrate compliance with the applicable statutory requirements. Therefore, the court denies summary judgment to Plaintiff on its New York mortgage foreclosure claim. *U.S Bank Nat'l Ass'n v. 22-33 Brookhaven, Inc.*, 219 A.D.3d 657, 663, 666 (2d Dep't 2023) (concluding that the lower court "should have denied those branches of the plaintiff's cross-motion which were for summary judgment on the complaint" because "the plaintiff failed to establish, prima facie, that it complied with RPAPL 1303").

#### 1.   Common Law Elements

Plaintiff asserts that it has satisfied the common law elements of a note, mortgage, and a defendant's default. (Pl.'s Mot. at 1, 7-15, 16.) Defendants respond that Plaintiff has failed to provide admissible proof of Borrower's default on the Loan. (Defs.' Opp. at 9-10.)

"In moving for summary judgment in an action to foreclose on a mortgage," a plaintiff establishes the common law elements of a prima facie case through "the production of the mortgage, the unpaid note, and evidence of default." *Deutsche Bank Nat'l Tr. Co. v. Pirozzi*, 230 A.D.3d 736, 737 (2d Dep't 2024); *Tawil*, 2025 WL

11

2482306, at *3 (same); *Deutsche Bank Nat'l Tr. Co. v. Kingsbury*, 171 A.D.3d 871, 872 (2d Dep't 2019) (same).

Plaintiff has provided evidence of the Mortgage and the Note by producing a copy of each. (Note; Mortgage; *see also* Allonge; Assignment.) Plaintiff has also provided evidence of Borrower's default by producing the Declaration of Sabastian Esteve (the "Esteve Declaration"), the Payment History annexed to the Esteve Declaration, and the Default and Acceleration Letters sent to Defendants notifying them of Borrower's defaults. (Esteve Decl.; Payment History; Default Letter; Acceleration Letter.) Plaintiff's "production of [these documents] provides sufficient evidence" of a mortgage, unpaid note, and a defendant's default. *Green Mountain*, 2025 WL 2494292, at *6 (first citing *Windward Bora LLC v. Mohamed*, No. 24-437, 2025 WL 88422, at *2 (2d Cir. Jan. 14, 2025) (summary order); and then citing *Bent*, 321 F. Supp. 3d at 414).

There also is no genuine dispute that Borrower is in default. Instead, Defendants argue that Plaintiff's evidence is insufficient. (Defs.' Opp. at 9-10.) Defendants argue that the court should disregard the Payment History because "[t]here is nothing therein connecting [it] to the subject mortgage loan" and because the Payment History "is entirely indecipherable and cannot constitute proof of anything, much less a default." (*Id.* at 9.) And, Defendants' argument goes, that after disregarding the Payment History, the only evidence of Borrower's default is the Esteve Declaration, which, by itself, cannot establish Borrower's default because Mr. Esteve "demonstrated no personal knowledge" of the business records of any loan servicers prior to KeyBank. (*Id.*) Defendants' argument fails at each step.

First, the court is not persuaded by Defendants' unsubstantiated characterizations of the Payment History. The Esteve Declaration directly connects Borrower's default with the annexed Payment

12

History. (Esteve Decl. ¶ 12 ("A true and correct copy of the [Payment] History demonstrating Borrower's payment default is attached hereto as Exhibit 7.").) And, the Payment History distinctly shows that no Loan payments have been made since the payment due on July 1, 2022. (Payment History.) Consequently, on this record, the court concludes that the Payment History *does* constitute proof of Borrower's default. *See United States v. Paugh,* 332 F. Supp. 2d 679, 681 (S.D.N.Y. 2004) (finding that the "[p]ayment [h]istory sufficiently establishes the default element"); *OneWest Bank, N.A. v. Hawkins,* No. 14-CV-4656 (NGG) (CLP), 2015 WL 5706945, at *6 (E.D.N.Y. Sept. 2, 2015) (concluding that the plaintiff's submission of an affidavit attaching a copy of a screen-print summarizing the relevant payoff calculations related to the loan "demonstrates the default on the loan through the failure of defendants to make monthly payments as they became due"), *report and recommendation adopted,* 2015 WL 5706953 (E.D.N.Y. Sept. 28, 2015); *Freedom Mortg. Corp. v. Petriello,* No. 22-CV-7310 (NJC) (JMW), 2025 WL 1726320, at *9 (E.D.N.Y. June 20, 2025) (finding that the plaintiff established the default element by submitting an affidavit confirming that the borrowers failed to make payments and a payment history evidencing their default); *Tawil,* 2025 WL 2482306, at *4 (finding the default element satisfied where the plaintiff submitted a copy of the payment history confirming the defendant's failure to make monthly payments).

Second, Defendants are mistaken that Mr. Esteve failed to demonstrate personal knowledge. A plaintiff establishes the default element if it produces "proof in the form of an affidavit of a person with knowledge." *Bent,* 321 F. Supp. 3d at 415; *Plenitude,* 2019 WL 4014840, at *4 n.6. Mr. Esteve swore on his "personal knowledge of the facts and events" in this case and his review of the records "kept by KeyBank and [Plaintiff] on the Loan," (Esteve Decl. ¶ 1)—including all Loan documents "made and kept in

the ordinary course of business," (*id.* ¶ 10)—that Borrower defaulted on the Loan beginning with the monthly payment due on August 1, 2022, (*id.* ¶ 12), and that Defendants "failed to cure the defaults and remain in default," (*id.* ¶ 17). Accordingly, the Esteve Declaration amounts to "proof" of Borrower's default "in the form of an affidavit of a person with knowledge." *Bent,* 321 F. Supp. 3d at 415. As such, the Esteve Declaration provides "sufficient evidence" of Borrower's default.[11] *Green Mountain,* 2025 WL 2494292, at *6 (quoting *Mohamed,* 2025 WL 88422, at *2 (concluding at summary judgment that the plaintiff satisfied the default element by submitting an affidavit stating that "based upon [the declarant's] review of the computerized business records for the [loan]," the loan is "currently in default and due")).

Finally, even assuming that Defendants were correct (meaning that the court cannot consider the Payment History), their argument still fails because where, as in this case, a plaintiff produces copies of the default notices it sent to the defaulting defendant, along with an affidavit attesting to the defendant's default based on personal knowledge and review of the plaintiff's business records, the default element is satisfied.[12] *See CIT Bank, N.A. v.*

---

[11] Defendants' reliance on *Bank of N.Y. Mellon v. Demasco,* 226 A.D.3d 855 (2d Dep't 2024) is inapposite. (Defs.' Opp. at 9.) In *Demasco,* the New York Appellate Division, Second Department held only that the subject affidavit was inadequate because the plaintiff could not "establish that the records provided by the [prior servicer] were incorporated into the recipient's own records and routinely relied upon by the recipient in its own business." 226 A.D.3d at 857. Not so here. Mr. Esteve attests that the records he reviewed include the records of any prior loan servicers, which were provided to him and incorporated into KeyBank's own records. (Esteve Decl. ¶ 1).

[12] For this reason, Defendants' invocation of the Second Department's decisions in *Smith* and *Medina* is unpersuasive. (Defs.' Opp. at 9-10.) In those cases, the Appellate Division found that an affidavit alone "failed to provide proof of the defendant's default in payment of the note in admissible form, as the affiant failed to attach copies of the business records on which she relied." *U.S. Bank Trust, N.A. v. Smith,* 217 A.D.3d 899, 900 (2d Dep't

14

*Mitchell*, No. 17-CV-1969 (ILG) (SMG), 2021 WL 54081, at *3 (E.D.N.Y. Jan. 6, 2021); *Bent*, 321 F. Supp. 3d at 415 & n.9. Plaintiff produced the Default and Acceleration Letters it sent to Defendants. The letters notified Defendants of Borrower's initial and continued defaults on the Loan. (Default Letter; Acceleration Letter.) Defendants neither deny that they received the letters nor maintain that Borrower cured the defaults. (*See* Defs.' Opp. at 7 ("Plaintiff provided copies of the November 9, 2022 notice of default." (citing Default Letter)), 9-10 (arguing that Plaintiff's proof of Borrower's default constitutes inadmissible hearsay).) Thus, Defendants' argument that Plaintiff failed to provide proof of Borrower's default in admissible form, fails to raise a triable issue of material fact.

For the above reasons, the court concludes that Plaintiff has satisfied the common law elements of a prima facie case for foreclosure. Plaintiff has produced sufficient evidence of the Mortgage, the unpaid Note, and Borrower's default, and Defendants have failed to raise a triable issue of material fact as to this threshold inquiry.

### 2.  Statutory Requirements

The court concludes that Plaintiff has failed to satisfy the statutory requirements of its prima facie case for foreclosure.

Plaintiff's Local Rule 56.1 Statement makes no mention of RPAPL's notice requirements nor Plaintiff's compliance therewith. (Pl.'s 56.1) And in moving for summary judgment, Plaintiff does not seek to affirmatively demonstrate its compliance with the statutory requirements. (*See* Pl.'s Mot. at 1.) Instead, Plaintiff addresses the requirements in the portion of its motion seeking

---

2023); *U.S. Bank Nat'l Ass'n v. Medina*, 230 A.D.3d 1371, 1376 (2d Dep't 2024) (same). Here, however, the Esteve Declaration attaches the Default Letter, the Acceleration Letter, the Payment History, and the other Loan documents that Mr. Esteve reviewed.

15

to "strike" the Answer. (*Id.* at 1, 13-15.) There, Plaintiff argues that Defendants "lack standing" to assert a Section 1303 "affirmative defense" and, alternatively, that any such defense is "moot." (*Id.* at 13, 14.) Both arguments are premised on Plaintiff's assertion that the December 2023 Notice complies with the applicable notice requirements in Section 1303 of RPAPL. (*Id.* at 13 (arguing that Defendants' Section 1303 defense is "moot" because Plaintiff "served" the December 2023 Notice "four months prior to the [c]ourt granting Defendants' motion to vacate"), 14-15 (arguing that the December 2023 Notice "meets all the requirements set out in RPAPL § 1303(4)").)

Defendants respond that Plaintiff did not strictly comply with Section 1303, and that this failure dooms Plaintiff's case. (Defs.' Opp. at 1.)

In its reply, Plaintiff maintains that Defendants "lack standing to raise any defense related to RPAPL § 1303" and that any such defense is moot because "proper service of the [December 2023 Notice] took place before Defendants' default was vacated." (Pl.'s Reply at 2.) Plaintiff also asserts that while the December 2023 Notice was "untimely" delivered, its untimely delivery does "not prove that the requisite [Section 1303] notice . . . was not properly served." (*Id.* at 5.)

New York authority is clear that a plaintiff's burden to establish its entitlement to a foreclosure judgment as a matter of law includes the burden to demonstrate "strict compliance" with RPAPL's notice requirements. *OneWest Bank, N.A. v. Ruiz*, No. 14-CV-3207 (RRM) (RLM), 2018 WL 1318983, at *4 (E.D.N.Y. Mar. 13, 2018) (quoting *Aurora Loan Servs., LLC v. Weisblum*, 85 A.D.3d 95, 103 (2d Dep't 2011)); *see also Regalado*, 751 F. Supp. 3d at 130 ("Failure to comply with the notice requirement is fatal to a party's foreclosure claim.").

16

Here, Plaintiff asserts that it complied with the applicable notice requirements (in Section 1303) by delivering the December 2023 Notice. (Pl.'s Mot. at 13-15; Pl.'s Reply at 2, 5.) Thus, the court proceeds by determining whether the December 2023 Notice strictly complies with Section 1303's notice requirements.[13]

"Notice, the final element of a prima facie case for mortgage foreclosure and sale, gives force to New York State protections to homeowners and tenants." *Plenitude*, 2019 WL 4014840, at *4. Among these protections is Section 1303. *Id.* (citing RPAPL § 1303); *First Nat'l Bank of Chicago v. Silver*, 73 A.D.3d 162, 163, 169 (2d Dep't 2010) (holding that in a foreclosure action, the plaintiff has the "burden of showing compliance" with Section 1303). Section 1303 states, in pertinent part, that the "foreclosing party in a mortgage foreclosure action, involving residential real property shall provide notice" entitled Notice to Tenants of Buildings in Foreclosure to "any tenant of a dwelling unit in accordance with" specific content, form, timing, and delivery requirements (the "Notice to Tenants"). RPAPL § 1303(1)(b), (4), (5). In turn, Section 1305, entitled Notice to Tenants, defines "residential real property" as "real property located in this state improved by any building or structure that is or may be used, in whole or in part, as the home or residence of one or more persons, and shall include any building or structure used for both residential and commercial purposes." RPAPL § 1305(1)(a).

Here, the Property is "operating as an apartment building," and thus "residential real property" for purposes of Section 1303.[14]

---

[13] The court addresses Plaintiff's arguments challenging Defendants' purported "affirmative defense" based on Plaintiff's failure to comply with Section 1303 in Section III.B.4, *infra*.

[14] In a letter to the court dated February 13, 2024, Plaintiff had initially argued that Section 1303 "is inapplicable" because the section "only applies to a mortgage foreclosure action involving 'residential real property,'"

(Esteve Decl. ¶ 8); RPAPL § 1305(1)(a). Specifically, the Property is the "home or residence" of multiple persons. (Sabbagh Decl. ¶ 7; Sabbagh Aff. ¶ 4; Lysenko Aff. (Dkt. 63-9) ¶ 2 (tenant of Apartment 1R); Shtridler Aff. (Dkt. 63-10) ¶ 2 (tenant of Apartment 1R); Grossman Aff. (Dkt. 63-11) ¶ 2 (tenant of Apartment 3R); Cinus Aff. (Dkt. 63-12) ¶ 2 (tenant of Apartment 3F); Solomon Aff. (Dkt. 63-13) ¶ 2 (tenant of Apartment 1F).) Therefore, to succeed on its motion for summary judgment, Plaintiff "must establish not only a mortgage, a note, and proof of default," but also "strict compliance" with Section 1303's Notice to Tenants requirements. *Tawil*, 2025 WL 2482306, at *4; *Wells Fargo Bank, N.A. v. McMahon*, 202 A.D.3d 886, 887 (2d Dep't 2022) ("It is the plaintiff's burden, on its motion for summary judgment, to demonstrate its strict compliance with the applicable provisions of RPAPL.").

Section 1303 "mandates," among other things, that the Notice to Tenants "be delivered [within] 10 days of service of the summons and complaint, be in bold, 14-point type, be printed on a colored paper that is other than the color of the summons and complaint, that the title of the notice be in bold, 20-point type, and include specific language." *22-33 Brookhaven*, 219 A.D.3d at 663 (citing RPAPL § 1303(4), (5)). "For buildings with five or more dwelling units," the section also demands that "a legible copy of the notice shall be posted on the outside of each entrance and exit of the building." RPAPL § 1303(4).

The record establishes that the Property has "more than 6 residential dwelling units." (Mortgage at ECF p.15.) Therefore, to make a prima facie case, Plaintiff must show not only that the December 2023 Notice complied with Section 1303's content and

---

and "this foreclosure action relates to a commercial loan, made to a commercial borrower, strictly for business purposes." (Pl.'s Resp. Letter Dated 2/13/2024 at 2.) In the instant motion, Plaintiff appears to have abandoned this erroneous argument.

18

form requirements, but also that it was "delivered within ten days of the service of the summons and complaint" in this action, and that a "legible copy" was "posted on the outside of each entrance and exit of the [Property]." RPAPL § 1303(4).

The evidence before the court establishes only that the December 2023 Notice complied with Section 1303 to the extent that it was printed on colored paper. (Dec. 2023 Not.; Dec. 2023 Not. Aff.) Thus, the court must deny summary judgment to Plaintiff on its RPAPL claim. *22-33 Brookhaven*, 219 A.D.3d at 663-65 (reversing grant of plaintiff's summary judgment motion because the plaintiff "failed to establish, prima facie, that it complied with RPAPL 1303" given that the "affidavits of service ma[d]e no averments that the RPAPL 1303 notice . . . complied with the requirements of RPAPL 1303, other than that it was printed on colored paper").

As Plaintiff concedes, the December 2023 Notice was "untimely." (Pl.'s Reply at 5.) Section 1303 requires the foreclosing party to deliver the Notice to Tenants "within ten days of the service of the summons and complaint." RPAPL § 1303(4). Plaintiff served Borrower with the summons and complaint on March 2, 2023. (*See* Executed Summons as to Borrower (Dkt. 6).) Thus, Plaintiff was required to deliver the Notice to Tenants by March 12, 2023. Plaintiff failed to do so. (Dec. 2023 Not. Aff. (swearing that the December 2023 Notice was delivered on December 5, 2023).) By delivering the December 2023 Notice over 260 days late, Plaintiff did not "strictly compl[y]" with Section 1303. *Merrill Lynch Credit Corp. v. Nicholson*, 210 A.D.3d 758, 761 (2d Dep't 2022) (reversing grant of plaintiff's summary judgment motion because the plaintiff failed to establish it had "strictly complied with RPAPL 1303"). Therefore, Plaintiff's motion for summary judgment must be denied.

Plaintiff's argument that the court should excuse the "untimely" delivery of the December 2023 Notice because the delay did not

19

"prejudice" the rights of the Property's tenants is unavailing. (Pl.'s Reply at 5.) New York courts require "strict compliance" with Section 1303's requirements. *22-33 Brookhaven*, 219 A.D.3d at 663-64. This is true even if the "absence of prejudice" stemming from a defective notice is "apparent." *CIT Bank, N.A. v. Anderson*, No. 16-CV-1712 (ERK) (PK), 2019 WL 3842922, at *3 (E.D.N.Y. Aug. 14, 2019) (citing *Hudson City Sav. Bank v. DePasquale*, 113 A.D.3d 595, 596 (2d Dep't 2014)).

Moreover, the New York Appellate Division, Second Department has already considered and struck down the very argument that Plaintiff advances now, concluding that "actual or constructive notice" does not suffice—not even "under circumstances where the borrower *has not shown prejudice* from the lender's failure to strictly comply with the statute." *Weisblum*, 85 A.D.3d at 103 (holding that a "plaintiff's failure to show strict compliance requires dismissal"), *abrogated on other grounds by Citibank, N.A. v. Conti-Scheurer*, 172 A.D.3d 17 (2d Dep't 2019); *see also Anderson*, 2019 WL 3842922, at *3 (E.D.N.Y. Aug. 14, 2019) (observing that the Second Department has "departed from [the general] rule . . . that notice serves to eliminate prejudice . . . in the narrow context of residential mortgage foreclosures, *requiring strict compliance with the RPAPL's notice provisions even where no reliance on the defective notice is alleged*") (emphasis added) (citing *Hudson City*, 113 A.D.3d at 596).

Second, the undisputed evidence also shows that Plaintiff failed to post a copy of the December 2023 Notice at each of the Property's entrances and exits. (Dec. 2023 Not. Aff.) The record establishes that there are "two entrances to the building." (Decl. of Receiver as to Property Conditions (Dkt. 27) ¶ 4; Sabbagh Decl. ¶ 4 (attesting that he "never saw a notice . . . posted at the outside of either entrance/exit of the Property"); Sabbagh Aff. ¶ 4 (same); Lysenko Aff. ¶ 3 (same); Shtridler Aff. ¶ 3 (same); Grossman Aff. ¶ 3 (same); Cinus Aff. ¶ 3 (same); Solomon Aff. ¶ 3

20

(same).) Plaintiff has produced evidence establishing only that the December 2023 Notice was delivered by "affixing and taping a true copy to *the* entrance door of [the] [P]roperty." (Dec. 2023 Not. Aff. (emphasis added).) Just one. By failing to establish that the December 2023 Notice was "posted on the outside of *each* entrance and exit," Plaintiff has failed to demonstrate strict compliance with Section 1303 for this additional reason. RPAPL § 1303(4) (emphasis added).

* * *

For the above reasons, Plaintiff has failed to strictly comply with Section 1303. Thus, Plaintiff has not established its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(a). Therefore, the court denies the portion of Plaintiff's motion for summary judgment on its RPAPL claim.

### B. Affirmative Defenses

For the reasons explained below, the court grants summary judgment to Plaintiff on all but Defendants' tenth affirmative defense due to Plaintiff's failure to comply with Section 1303.

Plaintiff moves "to strike the Answer" on the basis that there is no dispute of material fact as to any one of Defendants' ten affirmative defenses.[15] (Pl.'s Mot. at 1, 8-16.) Defendants did not

---

[15] As numbered in the Answer, Defendants' affirmative defenses are as follows: (1) personal jurisdiction, (Defs.' Answer ¶ 42 (first affirmative defense)); (2) statute of limitations, (*id.* ¶ 43 (second affirmative defense)); (3) statute of frauds, (*id.* ¶ 44 (third affirmative defense)); (4) waiver, (*id.* ¶ 45 (fourth affirmative defense)); (5) estoppel, (*id.* ¶ 46 (fifth affirmative defense)); (6) laches, (*id.* ¶ 47 (sixth affirmative defense)); (7) "res judicata and/or collateral estoppel," (*id.* ¶ 48 (seventh affirmative defense)); (8) Plaintiff's "failure to meet [a] condition precedent contained in [the] [M]ortgage," (*id.* ¶¶ 49-51 (eighth affirmative defense)); (9) standing, (*id.* ¶ 52 (ninth affirmative defense)); and (10) Plaintiff's "failure to meet [a] condition precedent under RPAPL § 1303," (*id.* ¶ 53 (tenth affirmative defense)).

specifically address this aspect of Plaintiff's motion in their briefing.[16] (*See generally* Defs.' Opp.).

"Summary judgment is not an all-or[-]nothing proposition." *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 361 F. Supp. 3d 324, 334 (E.D.N.Y. 2019) (quoting *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 824 F. Supp. 2d 524, 533 (S.D.N.Y. 2011)). Instead, a party "may move pursuant to Rule 56(a) for summary judgment as to an entire claim or defense, as well as part of a claim or defense." *Id.* (citing Fed. R. Civ. P. 56(a)). "Where a plaintiff uses a summary judgment motion, in part, to challenge the legal sufficiency of an affirmative defense—on which the defendant bears the burden of proof at trial—a plaintiff 'may satisfy its Rule 56 burden by showing that there is an absence of evidence to support an essential element of the [defendant]'s case.'" *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *DiCola v. SwissRe Holding (North America), Inc.*, 996 F.2d 30 (2d Cir. 1993)); *see also Regalado*, 751 F. Supp. 3d at 131 (same); *Green Mountain*, 2025 WL 2494292, at *7 (same). That is, where "the burden of proof at trial would fall on the non-moving party, the moving party can shift the initial burden by pointing to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022); *see also Wilmington PT Corp. v. Gray*, No. 19-CV-1675 (AMD) (TAM), 2025 WL 857979, at *3 (E.D.N.Y. Mar. 19, 2025) ("A plaintiff challenging

---

[16] However, Defendants did fully brief their arguments that Plaintiff failed to comply with the "contractually mandated" notice and cure requirements in Section 8.01(s) of the Mortgage, and with the Notice to Tenants requirements in Section 1303 of RPAPL. (Defs.' Opp. at 3-6 (Section 1303), 6-9 (Section 8.01(s)).) These arguments correspond to Defendants' eighth and tenth affirmative defenses, respectively. (Defs.' Answer ¶¶ 49-51 (Section 8.01(s)), 53 (Section 1303)).) The court addresses the parties' respective arguments on each of these issues below, *infra* Section III.B.3 (Section 8.01(s)), 4 (Section 1303).

the sufficiency of an affirmative defense on summary judgment may satisfy its burden by pointing to an absence of evidence to support an essential element of the affirmative defense."). "Where there is an absence of evidence to support an essential element of a defense, with respect to that defense 'there can be no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the affirmative defense necessarily renders all other facts immaterial.'" *Regalado*, 751 F. Supp. 3d at 131 (quoting *Giammettei*, 34 F.3d at 54). Accordingly, a court may grant the plaintiff summary judgment on an affirmative defense if its "review of the record in a light most favorable to the defendant reveals the absence of evidence supporting an essential element of the defense." *Giammettei*, 34 F.3d at 55; *Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, No. 15-CV-8459 (LGS), 2018 WL 3364388, at *1 (S.D.N.Y. July 9, 2018) (same).

Importantly, "Rule 56 does not allow district courts to automatically grant summary judgment on a claim simply because the summary judgment motion, or relevant part, is unopposed." *Creaven v. Erickson*, No. 22-874, 2023 WL 4247213, at *3 (2d Cir. June 29, 2023) (summary order) (quoting *Jackson v. Fed. Express*, 766 F.3d 189, 194 (2d Cir. 2014)); *Green Mountain*, 2025 WL 2494292, at *7 (same). Rather, in deciding the movant's unopposed claim, "the district court must still assess whether the moving party ha[s] fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law." *Jones v. Lamont*, 379 F. App'x 58, 59 (2d Cir. 2010) (summary order) (quoting *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004)); *Creaven*, 2023 WL 4247213, at *3 (same); *Green Mountain*, 2025 WL 2494292, at *7 (same).

Below, the court considers Defendants' affirmative defenses in the following groupings: (1) standing; (2) statute of limitations;

23

(3) Plaintiff's failure to comply with Section 8.01(s) of the Mortgage; (4) Plaintiff's failure to comply with Section 1303 of RPAPL; and (5) remaining defenses.

### 1. Standing

Plaintiff moves for summary judgment on Defendants' ninth affirmative defense, which asserts that "Plaintiff lacks standing to foreclose . . . because it cannot demonstrate that it was in possession of the . . . [N]ote and [M]ortgage at the time this action was commenced." (Pl.'s Mot. at 12; Defs.' Answer ¶ 52.)

A "plaintiff must establish its standing to be entitled to relief." *Emigrant Bank v. Cohen*, 205 A.D.3d 103, 111 (2d Dep't 2022); *Wells Fargo Bank, N.A. v. Rooney*, 132 A.D.3d 980, 981 (2d Dep't 2015) (same); *Donovan*, 856 F. App'x at 336 (same). Under New York law, "[s]tanding in residential mortgage foreclosure actions may be established any of three ways": (1) "where the plaintiff is the original lender in direct privity with the defendant"; (2) "where the plaintiff is a holder in physical possession of the note prior to the commencement of the action, with an allonge . . . to the plaintiff"; or (3) "when the note underlying an action was assigned to the plaintiff prior to the date of commencement of the action." *Cohen*, 205 A.D.3d at 112 (quoting *Wilmington Sav. Fund Soc'y, FSB v. Matamoro*, 200 A.D.3d 79, 90-91 (2d Dep't 2021)). That is, "a plaintiff establishes its standing in a [New York] mortgage foreclosure action, by demonstrating that, when the action was commenced, it was either the holder or assignee of the underlying note." *Melina*, 827 F.3d at 222; *Courchevel 1850 LLC v. Koznitz I LLC.*, No. 23-CV-7263, 2025 WL 1512953, at *2 (2d Cir. May 28, 2025) (summary order) (same). "New York courts have repeatedly held that proof of physical possession . . . is sufficient on its own to prove a plaintiff's standing." *Melina*, 827 F.3d at 223. Thus, a plaintiff may establish standing as the "holder" of the note by attaching the note with allonge to the complaint, and as the "assignee" of

24

the note by producing a written assignment. *Id.* at 222-23 (citing *Onewest, F.S.B. v. Goddard*, 131 A.D.3d 1028, 1029 (2d Dep't 2015)); *see also Avail Holding LLC v. Ramos*, 820 F. App'x 83, 85 (2d Cir. 2020) (summary order) (same); *Golden Bridge LLC v. DGS18 Realty LLC*, No. 22-CV-5857 (NGG) (CLP), 2025 WL 921098, at *8 (E.D.N.Y. Mar. 27, 2025) (same).

Plaintiff has produced the Note, the Allonge, the Mortgage, and the Assignment. (Note; Allonge; Mortgage; Assignment.) By attaching these documents to the Complaint, Plaintiff has demonstrated its possession of the Note and the Assignment, and thus, its standing to foreclose as both the holder and assignee of the Note. (Compl. (attaching these documents).)

In addition, Defendants fail to raise a triable issue of fact. The undisputed facts establish Plaintiff's physical possession of both the Note and the Assignment, and Defendants do not dispute that at the time Plaintiff commenced this action on February 13, 2023, it was the owner and holder of, and in physical possession of, these records. (Esteve Decl. ¶¶ 7, 10, 16; Defs.' 56.1 ¶¶ 4 (stating that Defendants "are without sufficient information to respond to [the] statement" that Freddie Mac assigned the Loan and Mortgage to Plaintiff), 6 (stating that Defendants "are without sufficient information to respond to [the] statement" that Plaintiff is the owner and holder of the Note and other Loan documents).) *See Green Mountain*, 2025 WL 2494292, at *8; *Petriello*, 2025 WL 1726320, at *11 n.12 (finding affirmative defense challenging plaintiff's standing meritless because it was "belied by the text of the Mortgage and Assignment" that the plaintiff submitted in support of its motion).

Given Plaintiff has established its standing and Defendants fail to raise a triable issue of material fact, the court grants summary judgment to Plaintiff on Defendants' ninth affirmative defense.

### 2. Statute of Limitations

Plaintiff moves for summary judgment on Defendants' second affirmative defense asserting that this case is barred by the statute of limitations. (Pl.'s Mot. at 9; Defs.' Answer ¶ 43.)

Under New York law, the "statute of limitations for a foreclosure claim is six years." *Lubonty v. U.S. Bank Nat'l Ass'n*, 34 N.Y.3d 250, 261 (N.Y. 2019) (citing N.Y. C.P.L.R. § 213(4)); *Fernandez*, 712 F. Supp. 3d at 335 ("In New York, an action to foreclose on a mortgage is subject to a six-year statute of limitations.") (quoting *53rd St., LLC v. U.S. Bank Nat'l Ass'n*, 8 F.4th 74, 78 (2d Cir. 2021)). As relevant here, the six-year statute of limitations "begins to run when . . . the entire mortgage amount [is] made immediately due." *Article 13 LLC v. Ponce De Leon Fed. Bank*, 132 F.4th 586, 589 (2d Cir. 2025) (first quoting N.Y. C.P.L.R. § 213(4); and then citing *53rd St., LLC*, 8 F.4th at 78). That is, "once a mortgage debt is accelerated, the entire amount is due and the [s]tatute of [l]imitations begins to run." *53rd St., LLC*, 8 F.4th at 78 (quoting *Ditmid Holdings, LLC v. JPMorgan Chase Bank, N.A.*, 180 A.D.3d 1002, 1003 (2d Dep't 2020)); *see also Lubonty*, 34 N.Y.3d at 261 ("Here, the limitations period began to run on June 11, 2007, upon AHMA's acceleration of plaintiff's mortgage.").

Plaintiff accelerated the Loan on January 11, 2023. (Defs.' 56.1 ¶ 11; Esteve Decl. ¶ 16; *see also* Acceleration Letter.) The statute of limitations began to run on that date. Thus, the six-year statute of limitations has not yet lapsed. Therefore, the court grants summary judgment to Plaintiff on Defendants' second affirmative defense.

### 3. Section 8.01(s)

Plaintiff moves for summary judgment on Defendants' eighth affirmative defense based on Plaintiff's purported failure to meet a

26

"condition precedent to commencing [this] foreclose action" under Section 8.01(s) of the Mortgage. (Pl.'s Mot. at 11; Defs.' Answer ¶¶ 49-51.) Plaintiff argues that the section does not apply. (Pl.'s Mot. at 11.) Defendants disagree, asserting that Section 8.01(s)'s notice and cure requirements govern because Plaintiff has alleged that Borrower violated Section 6.08(b) of the Loan Agreement. (Defs.' Opp. at 7 (citing Compl.).)

In reply, Plaintiff argues that Defendants' continued "reliance on Section 8.01(s) as creating a condition precedent which Plaintiff was required to first follow is misplaced" for three independent reasons: (1) the Loan Agreement is "clear" that Section 8.01(s)'s "notice and cure period requirement . . . only applies if Borrower defaults on any of its obligations other than those enumerated in Sections 8.01(a)-(r)," which it did not; (2) even if Borrower's defaults were not covered by Sections 8.01(a)-(r), Plaintiff was still not bound by Section 8.01(s)'s notice and cure requirements "given the harm or threat posed to [Plaintiff], the Loan[,] and the [Property's] tenants as a direct result of Borrower and Guarantor's defaults," which triggers the section's exclusion provision; and, in the alternative, (3) Plaintiff complied with Section 8.01(s)'s requirements by sending Defendants the Default Letter on November 29, 2022 and not accelerating the Loan until January 11, 2023. (Pl.'s Reply at 6-7 (first citing Loan Agreement § 8.01(s); and then citing Default Letter; and then citing Acceleration Letter).)

Section 8.01(s) authorizes Plaintiff to commence foreclosure proceedings if: (1) "Borrower fails to perform any of its obligations under this Loan Agreement (other than those Events of Default specified in Sections 8.01 (a) through (r) or included on any exhibit, schedule, or rider attached to this Loan Agreement)"; and (2) "that failure continues for a period of 30 days after Notice of the failure by [Plaintiff] to Borrower." (Loan Agreement

27

§ 8.01(s).) Section 8.01(s) also provides an exception to these requirements, stating that:

> No Notice or cure periods will apply in the case of any failure which could, in [Plaintiff]'s judgment, absent immediate exercise by [Plaintiff] of a right or remedy under this Loan Agreement, result in harm to [Plaintiff], danger to tenants or third parties, or impairment of the Note, the Security Instrument, this Loan Agreement, or any other security given under any other Loan Document.

(*Id.*)

The court concludes that Borrower's defaults qualify as Events of Default under Section 8.01(a), meaning that the notice and cure requirements in Section 8.01(s) do not apply.

According to Section 8.01(s)'s clear terms, for Defendants to prevail on their eighth affirmative defense, Borrower's default must neither (1) qualify as an "Event of Default" under Sections 8.01(a)-(r) of the Loan Agreement, nor (2) in Plaintiff's judgment, "result in" "harm to [Plaintiff]," "danger to tenants or third parties," or "impairment" of the Note, Mortgage, or "any other security given under any other Loan Document." (Loan Agreement § 8.01(s).) In turn, Section 8.01(a) defines an Event of Default as when "Borrower fails to pay or deposit when due any amount required by the Note, this Loan Agreement[,] or any other Loan Document." (Loan Agreement § 8.01(a).) Section 3 of the Note, states that "Borrower will make a payment every month on the first day of each month . . . until Borrower has paid the entire Principal Amount." (Note § 3(a).) Section 6.08 of the Loan Agreement states that "Borrower will pay" "all Taxes when due" and the "expenses of operating, managing, maintaining and repairing" the Property, "including utilities." (Loan Agreement § 6.08(a), (b).)

Borrower has failed to make monthly Loan payments since August 1, 2022. (Defs.' 56.1 ¶¶ 7-13; Esteve Decl. ¶¶ 11-13, 15-18; *see also* Payment History; Default Letter at ECF pp.3-4; Acceleration Letter at ECF pp.3-4.) These missed payments amount to an Event of Default as defined in Section 8.01(a) because they are "Borrower['s] fail[ures] to pay . . . when due any amount required by [Section 3 of] the Note." (Loan Agreement § 8.01(a).) Borrower has also failed to pay the Property's utilities bill and property taxes. (Defs.' 56.1 ¶ 9; Esteve Decl. ¶¶ 13-14.) These missed payments similarly amount to an Event of Default as defined in Section 8.01(a) because they are "Borrower['s] fail[ures] to pay . . . when due any amount required by . . . [Section 6.08 of] this Loan Agreement." (Loan Agreement § 8.01(a).)

As Events of Default under Section 8.01(a), Borrower's defaults are excluded from Section 8.01(s)'s notice and cure requirements. (Loan Agreement § 8.01(s) (excluding Events of Default defined in Sections 8.01(a)-(r)).) Therefore, Defendants' eighth affirmative defense fails. Consequently, the court grants Plaintiff's motion for summary judgment on this defense.

### 4.   Section 1303

As already explained, Plaintiff moves for summary judgment on Defendants' tenth affirmative defense based on its lack of compliance with Section 1303, and Defendants oppose that motion. *Supra* Section III.A.2. The court denies this aspect of Plaintiff's motion because what Defendants may have labeled as an "affirmative defense," (Answer ¶ 53), is not "an affirmative defense—*on which the defendant bears the burden of proof*," *Giammettei*, 34 F.3d at 54 (emphasis added), but a "mandatory condition or condition precedent" to the *foreclosing* party's case on which the "*foreclosing* party has the burden of [proof]," *Silver*, 73 A.D.3d at 167 (emphasis added). Nevertheless, Plaintiff submits several arguments for why the court should strike Defendants' tenth affirmative defense. None is convincing.

29

First, Plaintiff argues that "before inspecting the [December 2023 Notice]" for compliance with Section 1303, the court "must first" determine whether Defendants have "standing" to bring a defense based on this section. (Pl.'s Mot. at 13.) But this argument confuses the parties' burdens and asks the wrong question. The question is not, as Plaintiff would have it, whether Defendants "have standing" to assert this "affirmative defense." (*Id.*) It is instead whether Plaintiff, in moving for summary judgment, has met its burden to establish a prima facie case, which *includes* the burden to establish compliance with Section 1303. *Silver,* 73 A.D.3d at 169.

This first argument is based on Plaintiff's fundamental misunderstanding about which party bears the burden of proof to establish compliance with Section 1303's notice requirements, and the burden of production on this element on a motion for summary judgment. The law is clear that Plaintiff—not Defendants—bears the burden of proof as to establishing its foreclosure claim as a matter of law. *Donovan,* 856 F. App'x at 336-37 ("*If* the plaintiff establishes a prima facie case, 'the burden *then* shifts to the defendant . . . .'") (emphases added) (quoting *Capstone Bus. Credit,* 70 A.D.3d at 883). "The law is also clear that, on a motion for summary judgment, the burden of production . . . attaches to the party who would bear the burden of proof on that element at trial." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* No. 05-MD-1720 (MKB), 2024 WL 1142860, at *9 (E.D.N.Y. Mar. 15, 2024) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) ("Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")). And, as to which party bears the burden of proving compliance with RPAPL's notice requirements, "New York authority is clear that notice is an indispensable element of a

prima facie case."[17] *Plenitude Cap. LLC v. Utica Ventures, LLC,* No. 18-CV-2702 (MKB) (RER), 2019 WL 4014840, at *4 (E.D.N.Y. June 11, 2019) (first citing *Silver,* 73 A.D.3d at 165, 168; and then citing *U.S. Bank Nat'l Ass'n v. Sims,* 162 A.D.3d 825, 826 (2d Dep't 2018)), *report and recommendation adopted,* 2019 WL 3543610 (E.D.N.Y. Aug. 5, 2019); *see also United States v. Starr,* No. 16-CV-1431 (NSR), 2017 WL 4402573, at *4 (S.D.N.Y. Sept. 29, 2017) ("A foreclosing mortgagee that does not clearly establish compliance with RPAPL's notice require-ments, fails to meet its prima facie burden of establishing its entitlement to judgment as a matter of law.").

In 2010, the Second Department was "asked to determine an is-sue of first impression at the appellate level" in New York State: "whether the failure to comply with [RPAPL's] notice require-ments . . . must be raised as an affirmative defense or whether it

---

[17] State cases finding that a foreclosing party failed to establish its prima facie case because the Section 1303 notice did not comply with the statute's content, form, and delivery requirements abound. *See, e.g., Nicholson,* 210 A.D.3d at 761; *22-33 Brookhaven,* 219 A.D.3d at 663-65; *MTGLQ Investors, L.P. v. Assim,* 209 A.D.3d 1006, 1008 (2d Dep't 2022) (affirming denial of plaintiff's summary judgment motion because the "affidavit of service did not indicate that the notice served upon the defendant complied with all of the requirements of RPAPL 1303, including the proper typeface"). Ap-plying these state standards, courts in this circuit have found the same, even when the plaintiff's motion was unopposed. *See, e.g., Green Mountain Holdings (Cayman) Ltd. v. 501 Lafayette Ave LLC,* No. 21-CV-5844 (MKB) (TAM), 2023 WL 6594003, at *3 & n.5 (E.D.N.Y. Aug. 18, 2023) (observ-ing that a court "must determine" whether a plaintiff has complied with RPAPL's notice requirements, even on an unopposed motion for summary judgment because "failure to comply with [these requirements] is a suffi-cient basis to deny foreclosure relief"), *report and recommendation adopted sub nom. Green Mountain Holdings (Cayman) LTD v. 501 Lafayette Ave LLC,* 2023 WL 5993166 (E.D.N.Y. Sept. 15, 2023); *U.S. Bank Nat'l Ass'n ex rel. RMAC Tr., Series 2016-CTT v. Christian,* No. 19-CV-0427 (CBA) (RML), 2020 WL 3918566, at *3 (E.D.N.Y. Feb. 25, 2020) (same but on the plain-tiff's unopposed motion for default judgment), *report and recommendation adopted,* 2020 WL 3893015 (E.D.N.Y. July 10, 2020).

can be raised at any time during an action." *Silver*, 73 A.D.3d at 163. The Appellate Division considered RPAPL's purpose, noted the statute's use of the word "shall," and surveyed the cases examining Section 1303's notice requirements—finding that they "*all* dismissed the complaint where the plaintiff totally failed to show compliance with [RPAPL]'s notice requirements, regardless of *when* the defendant raised the issue." *Id.* at 169 (emphases added). The court then held—in no uncertain terms—that compliance with Section 1303's notice requirements "is a condition precedent which is the *plaintiff's* burden to meet, and which *does not have to be raised as an affirmative defense* in the answer," but "can be raised *at any time*." *Id.* at 163, 169 (emphases added). Consequently, contrary to Plaintiff's assertion, it is not Defendants' burden to demonstrate that Plaintiff failed to comply with Section 1303 or to raise a triable issue of material fact as to Plaintiff's compliance. Instead, as the movant on its RPAPL claim and the foreclosing party, *Plaintiff* bears the burden to demonstrate compliance with Section 1303, and to do so as part of its prima facie case.

Second, as to Plaintiff's standing argument, New York courts have already considered and rejected the argument Plaintiff advances now, stating that it is "unsupported by case law or the plain language of the statute." *650 Brooklyn LLC v. Hunte*, 47 Misc. 3d 885, 896 (N.Y. Sup., Kings Cnty. 2015). As the New York Supreme Court, Kings County has explained:

> The failure to enforce [Section 1303] as written, consistent with prior determinations that compliance is a condition precedent to maintenance of the foreclosure action, would defeat the purpose of the legislation, to protect tenants who might not be otherwise aware of their rights or even of the pendency of the [foreclosure] action.

*Id.*

Plaintiff's reliance on *Ekelmann Group, LLC v. Stuart*, 108 A.D.3d 1098 (4th Dep't 2013) is unconvincing. (Pls.' Mot. at 13; Pl.'s Reply at 2.) In *Ekelmann*, the New York Appellate Division, Fourth Department relied on the Second Department's opinion in *NYCTL 1996-1 Tr. v. King*, 13 A.D.3d 429 (2d Dep't 2004), to conclude that "defendants do not have standing to assert the defense that plaintiff failed to give proper [Notice to Tenants] under RPAPL 1303." *Ekelmann*, 108 A.D.3d at 1100 (citing *King*, 13 A.D.3d at 430). However, *King*—which was decided two years before Section 1303's enactment—actually held that the "defense of improper *service of process* in a foreclosure action is personal in nature and may only be raised by the party improperly served."[18] *King*, 13 A.D.3d at 430 (emphasis added) (citing *Home Sav. of Am. v. Gkanios*, 233 A.D.2d 422, 423 (2d Dep't 1996) (concluding that a defendant "lacks standing to challenge whether [a separate defendant] was properly served with process")). Thus, the case on which the decision in *Ekelmann* relies (*King*), stands for the rule that the defense of improper service of process—i.e., challenging the service of the summons and complaint—is personal, and says nothing about the defense of improper delivery of a Section 1303 notice. Nor could it.[19]

Try as it might, Plaintiff cannot rewrite Section 1303 to require "service" of a Notice to Tenants. The statute expressly states that the Notice to Tenants "shall be *delivered* within ten days of the *service* of the summons and complaint." RPAPL § 1303(4) (emphases added). Pursuant to this directive, Plaintiff was required to provide Defendants with proper "service of the summons and

---

[18] "RPAPL 1303 was enacted in July 2006 as part of the Home Equity Theft Prevention Act (hereinafter HETPA)." *Bd. of Directors of House Beautiful at Woodbury Homeowners Ass'n, Inc. v. Godt*, 96 A.D.3d 983, 984 (2d Dep't 2012); *see also Silver*, 73 A.D.3d at 165 ("HETPA became effective on February 1, 2007.").

[19] *King* (decided in 2004) predates the enactment of Section 1303 in 2006.

33

complaint," and *then* to provide the Property's tenants with the Notice to Tenants "within 10 days of [that] service." *Id.* Plaintiff failed to do the latter.

Third, Plaintiff's mootness argument is not supported by the evidence. According to Plaintiff, Defendants' "affirmative defense" based on Section 1303 is "moot" because Defendants were still in default in this action when the December 2023 Notice was delivered on December 5, 2023. (Pl.'s Mot. at 14; Pl.'s Reply at 2.) But this argument presupposes that the December 2023 Notice complied with Section 1303's requirements, which it does not. *Supra* Section III.A.2 (explaining that the December 2023 Notice does not comply with Section 1303's timing and delivery requirements). Thus, insofar as Plaintiff relies on the December 2023 Notice, this argument fails.

Nor is the court persuaded by the merits of this argument. Even if Plaintiff were correct that the December 2023 Notice complied with Section 1303, New York authority is clear that a Section 1303 defense may be raised "at any time." *Silver*, 73 A.D.3d at 163; *see also E. Sav. Bank, FSB v. Tromba*, 148 A.D.3d 675, 676 (2d Dep't 2017) ("A defendant mortgagor can raise the mortgagee's failure to comply with the statute at any time."). Plaintiff has yet to deliver notice to the Property's tenants complying with Section 1303. Thus, Defendants are well within their right to bring this defense now.[20] *See JPMorgan Chase Bank, N.A. v. Akanda*, 177 A.D.3d 718, 720 (2d Dep't 2019) (concluding that defendants "properly raised" the issue of plaintiff's compliance

---

[20] Plaintiff's reliance on *Deutsche Bank National Trust Company vs. O'Connor*, 223 A.D.3d 872 (2d Dep't 2024) is inapposite because in that case, the defendant failed to vacate her default and thus was "precluded from asserting defenses based on lack of standing and failure to comply with RPAPL 1303." 223 A.D.3d at 877. In contrast, Defendants have raised their Section 1303 "defense" only *after* the court vacated Guarantor's default and the default judgment against Borrower. (*See* 4/14/2024 M&O at 1 (vacating defaults); Defs.' Answer ¶ 53 (asserting Section 1303 defense).)

with RPAPL for the first time in their opposition to plaintiff's motion for summary judgment); *U.S. Bank Nat'l Ass'n v. Powell*, 187 A.D.3d 1238, 1240 (2d Dep't 2020) (same).

As already explained, New York courts—and indeed this court, (4/12/2024 M&O at 7)—have found that a plaintiff's compliance with RPAPL's notice requirements is a "condition precedent" to the commencement of a foreclosure action and that the plaintiff has the burden of establishing "strict compliance" with these requirements. *Supra* Section III.A.2. New York authority is clear that compliance with Section 1303 "is a condition precedent which is the plaintiff's burden to meet, and which does not have to be raised as an affirmative defense in the answer." *Silver*, 73 A.D.3d at 163, 169. New York authority is also clear that if the plaintiff "fails to demonstrate such compliance," the "foreclosure action will be dismissed." *Id.* at 166, 169; *see also Bank of New York Mellon v. McCaffrey*, 207 A.D.3d 614, 617 (2d Dep't 2022) (collecting cases). Under these standards, Plaintiff has the burden to demonstrate compliance with Section 1303 and the burden would only "shift" to Defendants *if* Plaintiff established this statutory requirement of its prima facie case. Plaintiff failed to do so. Therefore, the court denies Plaintiff's motion for summary judgment on its RPAPL claim and on Defendants' tenth affirmative defense.

### 5. Remaining Defenses

The court concludes that Defendants' remaining affirmative defenses are wholly conclusory and lack evidentiary support.[21]

First, Defendants' unsubstantiated allegation that they were not properly served with the summons and complaint runs contrary

---

[21] The remaining defenses are personal jurisdiction, statute of frauds, waiver, estoppel, laches, and "res judicata and/or collateral estoppel"—respectively, Defendants' first, third, fourth, fifth, sixth, and seventh affirmative defenses. (Defs.' Answer ¶¶ 42, 44-48.)

35

to statute. *See* Fed. R. Civ. P. 4(h); N.Y. C.P.L.R. § 311-a(a); N.Y. Ltd. Liab. Co. § 303(a)(1); *see also Gov't Emps. Ins. Co. v. Onyema*, 790 F. Supp. 3d 147, 161 (E.D.N.Y. 2025) (concluding defendant New York corporations were "properly served" because plaintiff "deliver[ed] copies of the summons and [c]omplaint to the New York Secretary of State"). Moreover, their extensive participation in this case on the merits without asserting a personal jurisdiction defense arising from improper service—including in opposition to Plaintiff's motion for summary judgment on this very issue— amounts to forfeiture. *See Tobin v. Gluck*, 11 F. Supp. 3d 280, 304-05 (E.D.N.Y. 2014) (collecting cases); *O'Connor*, 223 A.D.3d at 875 (same); *see also Datskow v. Teledyne, Inc. Continental Products Div.*, 899 F.2d 1298, 1300-03 (2d Cir. 1990) (holding that a defendant who raised an improper service of process defense in his answer forfeited the defense after participating in a scheduling conference with a magistrate judge, during which the defendant did not mention the personal jurisdiction defense); *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61-62 (2d Cir. 1999) (holding that a defendant who raised a personal jurisdiction defense in its answer forfeited the defense by failing to raise it again for four years, during which time the defendant had participated in considerable pretrial activity). Thus, the court grants Plaintiff's motion for summary judgment on Defendants' first affirmative defense.

Second, the record shows no indication of waiver or estoppel, nor support for any application of the statute of frauds or the doctrines of res judicata and collateral estoppel. As Defendants have proffered no evidence (or legal arguments) in support of these defenses, the court grants Plaintiff's motion for summary judgment on the third, fourth, fifth, sixth, and seventh affirmative defenses. *Green Mountain*, 2025 WL 2494292, at *13; *Greenlight Cap., Inc. v. Fishback*, No. 24-CV-2299 (LTS), 2025 WL 965597, at *6 (S.D.N.Y. Mar. 31, 2025) (finding that affirmative defenses pleaded in the answer including "estoppel, . . . waiver, . . . and an

36

oral forbearance agreement" for which the defendant "proffer[ed] no evidence or legal arguments in support" were insufficient to defeat summary judgment in a New York foreclosure action); *Gray*, 2025 WL 857979, at *1, *4 n.2 (granting the plaintiff's motion for summary judgment on each affirmative defense that the defendant "failed to respond [to] in any substantive way"); *Regalado*, 751 F. Supp. 3d at 126-27, 131-32 (granting the plaintiff's motion for summary judgment on each affirmative defense because the defendant "failed to oppose the motion, or otherwise support the defenses . . . with admissible evidence"); *Wilmington PT Corp. v. Danialian*, No. 19-CV-1972 (GRB) (JMW), 2023 WL 2632499, at *1, *3 n.3 (E.D.N.Y. Mar. 24, 2023) (granting the plaintiff's motion for summary judgment on each affirmative defense because the defendants neither "addressed [n]or made any arguments in opposition").

\* \* \*

For the above reasons, the court grants Plaintiff's motion for summary judgment on each of the affirmative defenses pleaded in the Answer except for the tenth affirmative defense due to Plaintiff's failure to comply with Section 1303.

37

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is GRANTED IN PART and DENIED IN PART. Given that Plaintiff has failed to comply with the statutory notice requirements set forth in RPAPL § 1303, the court DENIES summary judgment to Plaintiff on its RPAPL claim. The court GRANTS summary judgment to Plaintiff on the first nine affirmative defenses pleaded in the Answer. The case may proceed on Defendants' tenth affirmative defense.

SO ORDERED.

Dated:    Brooklyn, New York
          March 11, 2026

                              s/Nicholas G. Garaufis
                              NICHOLAS G. GARAUFIS
                              United States District Judge